JACOB W. TREEN v. STATE OF MISSISSIPPI.

[46 South., 252.]

CRIMINAL LAW AND PROCEDURE. *Officers. Public contracts. Code 1906, § 1305. Indictment for private interest in.*

Under Code 1906, § 1305, making it a misdemeanor for a public officer to be interested in a contract made by any board of which he is a member, an indictment is insufficient if it charge neither that defendant knew of the order of the board purporting to let the contract, nor procured its passage, nor accepted it, nor received benefit from it nor made claim under it.

FROM the circuit court of Lamar county.

HON. WILLIAM H. COOK, Judge.

Treen, appellant, a member of the board of supervisors was indicted, under Code 1906, § 1305, quoted in the opinion of the court, for being interested in a contract made by the board of which he was a member; was convicted and appealed to the supreme court.

The facts of the case are fully stated in the opinion of the court.

*C. G. Mayson,* for appellant cited: *Jesse v. State,* 28 Miss., 100; *Harrington v. State,* 54 Miss., 490; *Sullivan v. State,* 67 Miss., 346, 7 South., 275; *Rawls v. State,* 70 Miss., 739, 12 South., 584; *State v. Bardwell,* 72 Miss., 535, 18 South., 377; *Avant v. State,* 71 Miss., 78, 13 South., 881.

*Geo. Butler,* assistant attorney-general, for appellee, cited: *Beebe* v. *Sullivan Co. Supervisors,* 64 Hun, 377, 19 N. Y. Supp., 629; *Goodrich* v. *City of Waterville,* 88 Me., 39, 33 Atl., 659; *Smith* v. *City of Albany,* 61 N. Y., 444; *City of Ft. Wayne* v. *Rosenthal,* 75 Ind., 156, 39 Am. Rep., 127; *Tippecanoe County* v. *Mitchell,* 131 Ind., 370, 30 N. E., 409, 15 L. R. A., 520; 15 Am. & Eng. Ency. of Law (2d ed.), 976; *Funderburk* v. *State,* 75 Miss., 20, 21 South., 658.

Argued orally by *Frank Johnston,* for appellant and *George Butler,* assistant attorney-general, for appellee.

CALHOON, J., delivered the opinion of the court.

Appellant was tried and convicted under an indictment which charges as follows: "That Jacob W. Treen in said county, on the 1st day of January, A. D. 1907, was a member of the board of supervisors of said county, having been chosen as a member of said board for beat or district No. 1, thereof, for the term beginning on the ———— day of April, A. D. 1904, and ending on the first Monday in January, A. D. 1908, and while being such member of said board of supervisors, did unlawfully contract with said board of supervisors while he was a member thereof, by order passed by said board, by which said contract the said Jacob W. Treen was then and there employed as inspector of the work of construction of the courthouse then in course of construction, in and for said county, for which services Jacob W. Treen was to receive the sum of $50 from said county, per month, against the peace and dignity of the state of Mississippi." This indictment was demurred to, and the demurrer overruled, which brings up the question as to whether it charges the violation of any law of the state. This instrument is based on Code 1906, § 1305, which is in the following words:

"1305. (1229) *The same; not to be interested in public contracts.*—If any public officer or member of the legislature, or any officer, or any purchasing board of public contracts, shall be interested, directly or indirectly, in any contract with the state,

or a district, county, city, town, or village thereof, authorized by any law passed or order made by any board of which he may be or may have been a member, during the term for which he shall have been chosen, or within one year after the expiration of such term, he shall be guilty of a misdemeanor, and shall be fined 'a sum equal to double the value of the contract, or imprisoned in the county jail not less than one month nor more than one year."

Section 109 of the state constitution is in the following words:

"Sec. 109. No public officer or member of the legislature shall be interested, directly or indirectly, in any contract with the state, or any district, county, city, or town thereof, authorized by any law passed or order made by any board of which he may be or may have been a member, during the term for which he shall have been chosen or within one year after the expiration of such term."

In the present inquiry it is also convenient and proper to set out Code 1906, § 313, which is as follows:

"313. (294) *Shall remodel, repair, and erect courthouse and jail when necessary.*—If a new courthouse or jail shall be required in any county, or if the courthouse or jail shall need remodeling, enlarging, or repairing, the board of supervisors shall determine the material, the dimensions and the plan thereof, and may make the necessary contracts for the erection, remodeling, enlarging, or repairing thereof, and for furnishing the materials, and may appoint one or more commissioners to superintend the work as it progresses, who shall take care that the proper materials are furnished, and the work faithfully performed according to contract, and who for their services, shall receive a reasonable compensation. See §§ 331, 361, 363."

Code 1906, § 2195, reads as follows: "2195. (2019) *The same; pay for extraordinary services.*—Each member of the board of supervisors shall, in addition to the compensation prescribed in the preceding section, be entitled to receive three dol-

lars per day for the number of days actually served by him in inspecting the public roads, as required by law, and each member shall further be entitled to receive three dollars a day for each day occupied as members of a committee to view and lay out public roads, and to inspect and accept bridges built and other work done for the county by contracts, and while engaged officially in assessing damages to any person by the laying out or changing of public roads, but not exceeding one hundred dollars a year for all such last named services; but in counties having more than twenty thousand inhabitants, where the board works the public roads with the county convicts, or by contract, or both, there being no road commissioner, each member shall be entitled to receive three dollars each per day for the number of days actually served by him, under the regulations of the board, in supervising the custody and care of the convicts and the work done by them while in his district, and not exceeding two hundred dollars a year for all the extraordinary services provided for in this section."

In support of his proposition that the employment charged in the indictment was violative of no law or public policy, these statutory and constitutional provisions are referred to in a very strong brief of counsel for appellant. We have set them out in full in order to show the basis for an interesting question. Counsel re-enforces his argument on the face of these laws calling attention to the fact that the real evil to be remedied was the many frauds designed and effected in the allowance of public contracts for purchases and for buildings which characterized the reconstruction times and which antedated the constitution and the statutes. He also calls attention to the fact that, previous to 1871, there was no express prohibition in the law against any public officer having interest in a public contract awarded by a tribunal of which he was a member. He also refers to the fact of the introduction of a bill, in 1871, in the house of representatives, to prevent fraudulent letting of contracts, and its favorable report by the committee and its pas-

sage, subsequently becoming sections 1390–1393 of the Code of 1871, showing, as counsel thinks, the manifest intention to prevent such fraudulent contracts as were enumerated in the statute, meaning such contracts as were of a similar nature. He also calls attention to the fact that Code 1906, § 313, provides for the appointment of commissioners to supervise a public contract during construction, and to section 363, providing for inspection and acceptance by a committee of the whole board before final payment, and to section 2195, allowing compensation. He also stresses the fact that an employment of one of the members to give his whole time to the inspection gave the member no interest whatever in the contract of construction, but would be a wise measure to insure proper workmanship and proper materials. He thinks such employment similar to that expressly authorized by Code 1906, § 2195, authorizing extra payment to members of the board selected "to view and lay out public roads, to inspect and accept bridges and other work done for the county by contract"; and also, as kindred, he cites Code 1906, § 4467, in reference to compensation to a member of $20 per annum where a road commissioner is employed, and $50 per annum where no commissioner is employed. He also insists that it is very pertinent to his argument to consider that the legislature of 1900, in full view of Ann. Code 1892, § 1229, in creating the commission to build the capitol, saw fit to expressly prohibit any member of their body from serving on that commission, which it does in section 15, c. 55, of that act (page 63, Laws 1900), and he argues that if Ann. Code 1892, § 1229, prohibited this, then section 15 of the act was a mere superfluity. Where we have cited the Code of 1906, it will be found that the section corresponds to a section of the Code of 1892. These matters are referred to as evolving a very interesting question which is at the basis of this whole proceeding, if it be assumed that there was legal ground upon which this prosecution could be rested; but we will not suppose that the basis was there, and, assuming that the appointment of Treen by the board was, because of his relation to the board, absolutely void and unen-

forceable under the authorities produced by the learned assistant attorney-general in his brief, as well as under the case of *Board* v. *Arrighi,* 54 Miss., 668, the question still remains whether the indictment in this case is valid. We do not think it is. There is no charge in it that the appellee knew that any such order was made, or that he in any way procured it to be made, or that he in any way accepted it as placed upon the minutes, or that he in any way received any benefit from it or made any claim under it. It cannot be true, under our constitution and laws, that one can be indicted by the grand jury because a board of supervisors or other legislative body saw fit to appoint him to discharge functions, when he was not privy to the proceeding or had no knowledge of it. The indictment must charge some complicity in setting out the crime of entering into an unlawful contract. The mere order could not become a contract without his procurement or consent or acceptance of benefit.

We therefore think that the demurrer to the indictment should have been sustained, and the case is reversed and remanded.

*Reversed.*